# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 14-cr-20315-SHM-tmp |
| | ) | |
| TERRANCE FREEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On July 8, 2015, Defendant Terrance Freeman filed a Motion to Suppress. (Motion to Suppress, ECF No. 44.) Freeman filed an Amended Motion to Suppress on July 13 and filed a Second Motion to Suppress on August 7. (Amended Motion to Suppress and Second Motion to Suppress, ECF Nos. 50 & 55.) The government responded in opposition to the Motions on August 14. (Response, ECF No. 57.) On August 20, 2015, the Magistrate Judge held a suppression hearing. (R&R, ECF No. 71 at 1.)

Before the Court is the Magistrate Judge's September 4, 2015 Report and Recommendation Denying the Motion to Suppress (the "R&R"). (R&R, ECF No. 71.) On September 8, Freeman filed an objection to the R&R (the "Objection"). (Obj., ECF No. 72.) The government responded on September 9. (Response in Opposition, ECF No. 74.)

For the following reasons, the Objection is OVERRULED, the R&R is ADOPTED, and the Motion to Suppress is DENIED.

**I. Background**

The R&R sets forth the factual and procedural background of this case in detail. (R&R.) Unless otherwise stated, the Court adopts the R&R's defined terms.

**II. Standard of Review**

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to Magistrate Judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). "A district judge must determine de novo any part of a Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). The district court is not required to review—under a de novo or any other standard—"any issue that is not the subject of an objection." Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the Magistrate Judge to which no specific objection is filed. Id. at 151.

**III. Analysis**

   **A. Objections to Factual Findings**

Freeman objects to the factual finding that the affidavit in support of the search warrant states that "[I]n 2012, the FBI Safe Streets Task Force began a three year investigation concerning the distribution of narcotics . . . involving members of the Memphis Mob." (Obj., ECF No. 72 at 1; R&R, ECF No. 71 at 2.) Freeman argues that the affidavit actually states "that in 2012 the Safe Streets Task Force "began a *phase* of a three year investigation." (Obj., ECF No. 72 at 1.) Freeman is correct that the affidavit states "began a phase of a three year investigation." (Affidavit in Support of Warrant, Exhibit 3B at 12.) The government concedes this point. (Response, ECF No. 74 at 1.) Freeman argues that this clarification affects the finding that the affidavit in support of the warrant established probable cause. As discussed below, the clarification does not defeat the finding of probable cause.

Freeman next objects to the finding that Special Agent Simpson was a credible witness at the suppression hearing and that Freeman was not a credible witness because the Magistrate Judge based this finding on their demeanors. (Obj., ECF No. 72 at 2.) Based on this objection, Freeman also objects to the finding that the SWAT team knocked and announced themselves before entering Freeman's residence on Tranquil Creek to execute

3

the warrant and that the SWAT team acted in a reasonable manner. (Id.)

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." United States v. Johnson, No. 10-20176, 2011 WL 3844194 at *2 (W.D. Tenn. Aug. 30, 2011) (citing United States v. Raddatz, 447 U.S. 667, 675-76 (1980))(citations omitted). "When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." Id. (citing United States v. Robinson, No. 1:07-CR-01, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)) (citations omitted). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." Id. (citations omitted).

The Magistrate Judge's credibility determination was based on Simpson and Freeman's testimony and demeanor during the suppression hearing. (R&R, ECF No. 71 at 7.) The two versions of the execution of the warrant as told by Simpson and Freeman

4

were "starkly different." (R&R, ECF No. 71 at 6; TR, ECF No. 66 at 40-58;68-82.) They were the only two witnesses testifying to pertinent issues about the execution of the warrant. (R&R, ECF No. 71 at 5-7.) Robert Bertling, another SWAT team member present at Tranquil Creek during the execution of the warrant, also testified, but he was late to the execution of the warrant and arrived after entry into the residence had been made. (TR, ECF No. 66 at 60.) The Magistrate Judge found that Bertling's testimony was not pertinent to any of the Magistrate Judge's conclusions. (R&R, ECF No. 71 at 6 n.4.)

The Magistrate Judge was in a better position to judge the demeanor of the witnesses as he saw and heard them testify during the hearing. The transcript of the testimony gives the Court no reason to question the Magistrate Judge's assessment that Simpson was a credible witness or that Freeman was not credible. Absent such a reason, the Court adopts the Magistrate Judge's factual findings that Simpson was a credible witness, that Freeman was not, and that the SWAT team knocked and announced and acted in a reasonable manner during the execution of the warrant.

**B. Objections to Conclusions of Law**

Freeman objects to the conclusion that he is not entitled to a <u>Franks</u> hearing because counsel has not made a substantial preliminary showing that a false statement was made knowingly,

5

intentionally, or with reckless disregard for the truth in the affidavit supporting the search warrant. (Obj., ECF No. 72 at 2.) Specifically, Freeman argues that materially false statements were made in the affidavit because the "ping" used to determine where Brian Murray's cellular telephone was on March 29, 2014, has a "36 meter radius of certainty as to the location of the cell phone being tracked." (Obj., ECF No. 72 at 2.)

A <u>Franks</u> hearing allows defendants to challenge the veracity of a search warrant affidavit. <u>United States v. Keszthelyi</u>, 308 F.3d 557, 566-68 (6th Cir. 2002). The movant must first "provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth." <u>United States v. Mastromatteo</u>, 538 F.3d 535, 545 (6th Cir. 2008).

Defense Witness Chris Miller, who worked at the U.S. Attorney's Office, testified that the coordinates provided by AT&T fall on the front yard of Tranquil Creek. (TR, ECF No. 66 at 25.) That testimony is confirmed in Exhibit 2, which depicts the coordinates falling on the front yard of Tranquil Creek when entered into Google Earth. (Exhibit 2.) Miller testified that the certainty range is within 36 meters. (TR, ECF No. 66 at 25.) That testimony is confirmed by Exhibit 1, an email from AT&T. (Exhibit 1.) Miller has experience with tracking the location of cellular devices in this case. (TR, ECF No. 66 at

6

26.) He testified that, based on his knowledge of the case, it is "not a lie" to say that the GPS data revealed that Murray was at Freeman's residence. (Id. at 27.)

The supporting affidavit states in pertinent part that "on March 29, 2014, at 12:01 AM, Murray's cellular telephone registered a GPS location at Terrance Freeman's house, located at [xxxx] Tranquil Creek, Memphis, TN." (Exhibit 3A at 34.) The affidavit continues that, "based on your affiant's training and experience, and familiarity of this case and the manner in which Murray conducts narcotics transactions, your affiant believes that Murray met with Terrance Freeman at [xxxx] Tranquil Creek . . . ." (Id.)

There is no evidence in the record to support a finding that counsel has made a preliminary showing that a false statement was made knowingly, intentionally, or with reckless disregard for the truth in the affidavit about the GPS location of Murray's cellular device on March 29, 2014. Special Agent Jones accurately stated that the cellular device registered a GPS location at Freeman's house and that based on Special Agent Jones' experience with the case, he believed Murray met Freeman at that location on that date. That the GPS location may have been off by up to 36 meters does not make the statement a false one satisfying the requirement for a Franks hearing. Freeman's witness, Miller, also testified that the statement was "not a

lie" given his experience in tracking other GPS coordinates in this case and that this tracking was more accurate than others. (TR, ECF No. 66 at 26-27.) For the foregoing reasons, the Court adopts the Magistrate Judge's conclusion of law on this issue and Freeman's objection is OVERRULED.

Freeman also objects to the conclusion that there was probable cause to search [xxxx] Tranquil Creek. (Obj., ECF No. 72 at 2.) He reiterates the arguments made in the Motion to Suppress that the calls intercepted between Freeman and Murray in October 2013 were stale by the time the warrant was issued in April 2014. (Id. at 2-3.) Freeman argues that the October calls and the March GPS ping are "at best tangentially related and at worst, misleading as to the likelihood that the items sought in the search warrant would be located at the address." (Id. at 3.)

"The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" United States v. Greene, 250 F.3d 471, 478 (6th Cir. 2001) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)). The affidavit must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003)).

8

"Whether information is stale in the context of a search warrant turns on several factors, such as 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?).'" United States v. Brooks, 594 F.3d 488, 493 (6th Cir. 2010)(citations omitted). "In the context of drug crimes, information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'" Id. (citing United States v. Frechette, 583 F.3d 374, 378 (6th Cir.2009)).

Long-term operations "may allow for a greater lapse[] of time between the information relied upon and the request for a search warrant." U.S. v. Thomas, 605 F.3d 300, 310 (6th Cir. 2010). The critical question is "whether the information contained in the affidavit, when presented to the . . . . judge, established that there was a fair probability that [evidence] would be still found a [the location of the search]." United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006) (alteration in original) (citations omitted). Stale information may be refreshed "if the affidavit contains recent information [that] corroborates otherwise stale information." Thomas, 605 F.3d at

9

310 (citing United States v. Spikes, 158 F.3d 913, 924 (6th Cir. 1998)).

The crime being investigated was long-term. The FBI Safe Streets Task Force had been investigating the distribution of narcotics and the commission of violent crimes by members of the Memphis Mob for several years. (Exhibit 3A at 11.) Ongoing calls between Freeman and Murray in late 2013 established a fair probability that contraband could still be found at Freeman's residence in the spring of 2014.

Even if the phone calls were arguably stale, the March 29, 2014 GPS ping refreshes the phone call evidence and is sufficiently related to the October 2013 calls to establish probable cause to search Tranquil Creek. Eighty-five intercepted occasions demonstrated that Murray and Freeman were holding narcotics-related conversations. (Exhibit 3A at 14.) That those calls were found during a "phase" of a larger investigation in no way defeats the finding of probable cause. (Obj., ECF No. 72 at 1.) The content of the phone calls establishes that Murray frequently met Freeman outside Freeman's residence. (Exhibit 3A at 13;33-34.) The March 29, 2014 GPS ping shows Murray again at Freeman's residence. (Id. at 34.) The GPS location then shows Murray at another residence, also suspected of involvement in the conspiracy, just 16 minutes later. (Id.) That evidence corroborates the evidence

established by the prior phone calls when the affidavit is viewed based on the totality of the circumstances. For the foregoing reasons, the objection is OVERRULED.

Freeman objects to the conclusion that the good-faith exception to the warrant requirement applies here even assuming, *arguendo*, that the affidavit lacked sufficient probable cause to support the issuance of a search warrant for Tranquil Creek. (Obj., ECF No. 72 at 3.) He argues that the finding that Simpson and the SWAT Team's entry to the house was justified by the good-faith exception is "frankly, not relevant." (Id.) Freeman's reasoning is vague, but suggests that the good-faith exception should not apply because the search was conducted by the agents who authored the affidavit. (Id.)

The good-faith exception is a recognized exception to the exclusionary rule that applies when "the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate . . . ." United States v. Rose, 714 F.3d 362, 367 (6th Cir. 2013) (citing United States v. Watson, 498 F.3d 429, 431 (6th Cir. 2007)) (citations omitted). "In determining whether an officer had good faith, this Court looks to whether the officer would have known that the search was illegal, despite the magistrate's authorization." Id. (citations omitted). The exception does not apply if it would be unreasonable to rely on the affidavit because it is so

11

lacking in probable cause. Id. (citations omitted). The exception also does not apply if the Magistrate Judge was not neutral, was misled by false information, or if the warrant was so facially deficient that relying on it would be unreasonable. United States v. Hodson, 543 F.3d 286, 292 (6th Cir. 2008).

After reviewing the record, there is no evidence that Simpson or the SWAT Team would have known the search was illegal, assuming *arguendo* that it was. As discussed above, Freeman has failed to demonstrate that the warrant contains any materially false information about the probable cause justifying a search of Tranquil Creek. For that reason, no one executing the warrant would have believed the search was illegal.

The affidavit supporting the request for the search warrant is thorough and represents several months of investigations and evidence of the interactions between Freeman and Murray. (Exhibit 3A.) It is no so facially deficient that anyone executing the search warrant should not have reasonably relied on the warrant. There is also no evidence that the issuing judge was misled or abandoned her neutral role. For the foregoing reasons, the objection is OVERRULED.

Freeman's last two objections are impermissibly vague and do not address legal conclusions made in the R&R. He concedes that the failure to knock and announce does not require the suppression of evidence. (Obj., ECF No. 72 at 3.) He then

objects "to the reasonableness of the search, based upon the failure to knock and announce of the entry officers, the use of devices at entry that caused damage to the property and potentially injury to those within, the damage done to the front and back door of the residence, and the treatment of the family once entry was made." (Id. at 3-4.) He then argues that the method of entry was not supported by the affidavit. (Id. at 4.)

Parties cannot validly object to a Magistrate Judge's report without explaining the source of the error. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991). The "district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report." Id. (citing Lockert v. Faulkner, 843 F.2d 1015, 1019 (7th Cir. 1988)). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." Zimmerman v. Cason, 354 F. App'x 228, 230 (6th Cir. 2009).

The Magistrate Judge briefly discussed Freeman's complaints of mistreatment by the officers who executed the search warrant and found that none of Freeman's allegations had evidentiary support or provided a basis for granting the Motion to Suppress. (R&R, ECF No. 21 n.6.) Freeman's objection does not suggest why that conclusion is incorrect. He simply lists again complaints about how the search was executed. He does not explain how his

13

complaints are relevant to the Magistrate Judge's legal conclusions. Freeman's last two objections are OVERRULED.

**IV. Conclusion**

For the foregoing reasons, the Objection is OVERRULED, the R&R is ADOPTED, and the Motion to Suppress is DENIED.

So ordered this <u>11th</u> day of September, 2015.

<u>s/ Samuel H. Mays, Jr.</u><br>
SAMUEL H. MAYS, JR.<br>
UNITED STATES DISTRICT JUDGE